STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID W. RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    (415) 436-7700
Facsimile:    (415) 436-7706
Email:        David_Rizk@fd.org

Counsel for Defendant WILSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT WILSON,<br><br>Defendant. | **Case No.:** CR 19–00529 SI<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Court:**         Telephonic/Video<br>**Hearing Date:** August 7, 2020<br>**Hearing Time:** 11:00 a.m. |

### I.   INTRODUCTION

Robert Wilson will be before the Court for sentencing in this Tenderloin drug case. Mr. Wilson has relatively minimal criminal history and, until this case, had spent a total of 10 days in jail in his life. He self-surrendered to custody pursuant to the terms of his plea agreement on the day he plead, January 17, 2020, and has thus already served approximately six months at Santa Rita Jail in very difficult conditions. Under his Rule 11(c)(1)(B) agreement plea agreement (which was entered into before the pandemic), Mr. Wilson is required to ask the Court to sentence him to the high end of the stipulated Guideline range, *i.e.*, 16 months. He appreciates that 16 months is actually a lenient sentence given that he was found in possession of drugs for sale and a handgun, but he asks for the

Court to consider his health, his relative lack of criminal history, and his need and desire for substance abuse treatment, in sentencing him. The Court should also consider that he is 46 years old and has Stage 2 Hypertension and a Body Mass Index (BMI) of 31.1—factors which puts him at a heightened risk of serious illness or death if he contracts COVID-19, according to the Center for Disease Control and Prevention (CDC). The longer he spends in Santa Rita, the greater the risk to his health.

## II.  SENTENCING GUIDELINES

Mr. Wilson has no prior convictions that qualify for points under the U.S. Sentencing Guidelines, and therefore falls into Criminal History Category I. He stipulates the Offense Level should be calculated as follows:

| | |
|---|---:|
| Base Offense Level, U.S.S.G. §2B1.1(a)(2): | 12 |
| Possession of a firearm, U.S.S.G. | +2 |
| Acceptance of responsibility, U.S.S.G. § 3E1.1: | -2 |
| **Total Offense Level** | **12** |

For a Total Offense Level of 12, and Criminal History Category I, the Guideline range is 10-16 months, within Zone C.

## III.  BACKGROUND

Mr. Wilson was raised in San Francisco by his mother Mary Lewis. PSR ¶ 40. Unfortunately, his father was not his life. *Id.* His family was not well off, but he nonetheless had a relatively positive childhood growing up with his younger sisters. *Id.* ¶ 41. He recalls participating in the Boys and Girls Club, participating in organized athletics, and making music. *Id.* ¶¶ 42, 45. He attended high school at Galileo High School in San Francisco through the 12th grade (Mr. Wilson was working on earning his GED until the coronavirus pandemic shut down programming). *Id.* ¶ 60. Mr. Wilson was introduced to marijuana at 17 years old, started using cocaine in his twenties, and eventually became a daily user. *Id.* ¶¶ 55-56. Mr. Wilson's addiction was never addressed and led to a few arrests and two convictions, for possession of a prescription drug and possession for sales, as a young man. *Id.* ¶¶ 29-30. He has never committed a violent crime and his last contact with the criminal justice system was 19 years ago, when he was 27 years old. *Id.* ¶ 30.

Since then, Mr. Wilson has married and raised four children. *Id.* ¶ 47. He is also a grandfather to his daughter's five-year son. *Id.* He greatly values his relationship with his family and is close to his children; those around Mr. Wilson remain fully supportive. *Id.* ¶¶ 47-49. Mr. Wilson also has a history of employment at a number of regular jobs in retail and odd jobs for friends and family. *Id.* at ¶¶ 62-63. He hopes to take advantage of his supervision in this case to obtain education and vocational advancement as well as treatment for his substance use (Pretrial Services recommended residential treatment and Mr. Wilson wanted to go but his plea agreement required him to surrender to custody instead). *Id.* ¶ 59.

### IV. LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker,* 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence. Importantly, the Court may not presume the Guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam). Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

### IV. ARGUMENT

Several matters warrant the Court's consideration in connection with the § 3553(a) factors and Mr. Wilson's sentencing recommendation:

*First*, Mr. Wilson's health and the present pandemic counsel against a sentence longer than 16

DEFENDANT'S SENTENCING MEMORANDUM
*WILSON*, CR 19–00529 SI

months. Mr. Wilson's Santa Rita Jail medical records indicate that he has Stage 2 Hypertension[1] and that his BMI is above 30. Rizk Decl., Ex. A. Both of these are considered by the CDC to be risk factors for serious illness from COVID-19.[2] Significantly, this plea agreement was negotiated in late 2019 and formally entered into by Mr. Wilson on January 17, 2020—well before the pandemic had caused major disruptions within the United States, and fundamentally altered the custodial environment and health risks to inmates. Thus, while Mr. Wilson is still obliged to support a recommendation of 16 months, the Court may nevertheless consider that conditions have obviously changed dramatically in determining Mr. Wilson's sentence.[3]

As of now, there are 11,198 coronavirus cases in Alameda County and 182 deaths.[4] At Santa Rita Jail, according to the Sheriff, there are have been 172 confirmed coronavirus cases among inmates and staff.[5] Twenty-seven inmates and 12 staff/contractors are currently positive. *Id.* Thirty-five inmates are symptomatic and awaiting test results. *Id.* Six housing units (with an unknown number of individuals) are quarantined due to exposure to the virus. *Id.* Conditions in the jail are, as the Court is no doubt aware, much worse than usual. Inmates are in tight quarters, even more so with the closure of North County Jail. Most units have dozens of inmates living together, with two inmates to a cell. Access to personal hygiene items is limited with only those inmates that have certain means able to purchase commissary (better/more soap and other hygiene items). While the jail has provided each inmate with a mask and one additional bar of soap, it is hardly enough to protect the population,

---

[1] "Hypertension Stage 1 is when blood pressure consistently ranges from 130-139 systolic or 80-89 mm Hg diastolic," whereas "Hypertension Stage 2 is when blood pressure consistently ranges at 140/90 mm Hg or higher." *See* American Heart Association, "Understanding Blood Pressure Readings," *at* https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings (July 31, 2020). Mr. Wilson's readings are consistently within the rage for Stage 2.
[2] CDC – Coronavirus Disease 2019 (COVID 19) – People with Certain Medical Conditions, *at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (July 31, 2020).
[3] Defense counsel has requested that the government agree to strike from the plea agreement the provision under which Mr. Wilson purported to waive, prior to the pandemic, his right to seek compassionate release under 18 U.S.C. § 3582(c). As of this filing, the government has not responded.
[4] *Coronavirus in California: Map and Case Count*, The New York Times (July 31, 2020), *at* https://www.nytimes.com/interactive/2020/us/california-coronavirus-cases.html (updated regularly).
[5] Alameda County Sheriff, COVID-19 Update (July 31, 2020) *at* https://www.alamedacountysheriff.org/admin_covid19.php (updated regularly).

as the ongoing outbreaks have now clearly demonstrated. Additionally, the jail has now restricted all visits to the jail. No attorney, family, friends, or even experts are allowed into the jail. Programming at the jail has been discontinued. Inmates are extremely anxious, and many are trying to stay holed up in their cells to avoid contact. Mr. Wilson is himself very worried about himself and his family.

Defense counsel recently contacted Regional Counsel for Bureau of Prisons (BOP), who confirmed that BOP is transferring some inmates from Santa Rita Jail to BOP facilities at the moment, although the transfers are limited and subject to a case-by-case determination. Thus, depending on the length of the sentence Mr. Wilson receives, he will likely have to spend all of it at Santa Rita Jail. Under ordinary conditions, the jail has less space, worse facilities, fewer programming options, and less access to medical care than BOP facilities. Even if Mr. Wilson is transferred to BOP, conditions in prison facilities are also grim. Social visits have been suspended.[6] As of this filing, 10,567 inmates and 1,184 BOP staff members have tested positive, and 103 inmates and one staff member have died (these figures do not cover inmates held at privately-run facilities).[7] At FCI Seagoville, for example, there are currently 982 inmates and staff members who are currently positive. *Id.* To date, Lompoc, Lexington, Terminal Island, Oakdale, Butner, Fort Worth, Beaumont, Forrest City, and Elkton have all experienced massive outbreaks with hundreds of inmates testing positive at each facility. *Id.* Defense counsel has spoken with former clients at BOP facilities who confirm that inmates are scared and unable to distance or otherwise protect themselves.

In sum, this is an exceptionally difficult and dangerous to time to serve a sentence. Time served now is much harder than time served under normal circumstances and conditions are not likely to change anytime soon. Thus, a 16-month sentence imposed now should be considered a much harsher sanction than it would normally be. Further, the health risk to vulnerable inmates like Mr. Wilson from being in custodial environments with inferior medical care cannot be understated. A recent large-scale national study of state and federal prisoners found that <u>the death rate for COVID-positive prisoners in the United States is 3.0 times higher than the rest of the out-of-custody population</u>, when

---

[6] BOP, BOP Implementing Modified Operations (July 31, 2020), *at* https://www.bop.gov/coronavirus/covid19_status.jsp.
[7] BOP, COVID-19 Cases (July 31, 2020), *at* https://www.bop.gov/coronavirus/ (updated regularly).

DEFENDANT'S SENTENCING MEMORANDUM
*WILSON*, CR 19–00529 SI

adjusted for age and sex.[8] Mr. Wilson therefore respectfully asks the Court to consider these dire circumstances when sentencing him.

*Third,* given Mr. Wilson's personal circumstances and need for rehabilitation, a harsher sentence is not necessary to mete out sufficient punishment, consistent with the mandate of § 3553(a). Aside from considerations of health, Mr. Wilson's personal history also supports a lenient sentence. Mr. Wilson has had minimal contact with the criminal justice system during his life, and no contact at all with it in many years. The offense here, like the prior offenses, was driven by his addiction. Mr. Wilson has otherwise led a productive and positive life. Significantly, he has never had the opportunity to participate in substance abuse treatment, PSR ¶ 59, and he genuinely wants the Court's help in addressing that major problem in his life. Given Mr. Wilson's age, his voluntary embrace of treatment, the abiding support of his family, and the treatment resources that U.S. Probation is poised to offer, it appears that he is a promising candidate for rehabilitation into a sober lifestyle. The defense therefore respectfully submits that treatment, rather than a longer period in custody (especially during a public health crisis), will lead to a superior result in this case for Mr. Wilson, the community, and the Court.

*Fourth*, a greater sentence is not necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, ensure deterrence, or guarantee public safety. As noted above, the recommended disposition of 16 months was reached prior to the pandemic—and since then, as a result of changed conditions, the recommended sentence has admittedly become a much harsher sanction than originally contemplated. Therefore, there can be real question that 16 months is more than adequate for purposes of punishment, etc. Further, as to deterrence specifically, the available data does not support the conclusion that harsher sentences promote general deterrence[9]; indeed, the Sentencing Commission's ongoing series of studies on recidivism have shown extremely

---

[8] Brendan Saloner, et al., *COVID-19 Cases and Deaths in Federal and State Prisons*, Journal of the American Medical Association, Pub. Online July 8, 2020, *at* https://jamanetwork.com/journals/jama/fullarticle/2768249 (July 13, 2020).

[9] *See, e.g.,* D. Tomlinson, *An Examination of Deterrence Theory: Where Do We Stand?* FEDERAL PROBATION 80 (3), 33-38 (Dec. 2016) ("Severity of punishment was once thought to deliver the main deterrent effect; the more severe the consequence for law-breaking, the less likely an individual is to commit a crime. However, this assumption has not been supported in the literature.").

DEFENDANT'S SENTENCING MEMORANDUM
*WILSON*, CR 19–00529 SI

mixed results and no clear relationship between punishment and the tendency to reoffend.[10] With regard to specific deterrence, Mr. Wilson has already served six months—far, far longer than the ten days total he had previously spent in jail during his twenties. Finally, a longer sentence is also unnecessary to ensure public safety. The government stipulated to conditions of release the day Mr. Wilson was arraigned, and he remained safe for several months before surrendering in January. Although he did admit to continuing to use marijuana and cocaine, he wanted treatment—and once he receives it on supervision, he will present no danger to himself or anyone else.

### V.  CONCLUSION

For all the reasons set forth above, Mr. Wilson respectfully asks that the Court sentence him to no more than 16 months of custody, followed by three years of supervised release with the special condition that he participate in substance abuse programming at the direction of U.S. Probation.

Dated:   July 31, 2020

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
DAVID W. RIZK
Assistant Federal Public Defender

---

[10] *See* U.S. Sentencing Commission, *Length of Incarceration and Recidivism* (April 2020), at 3 ("Empirical research on the relationship between length of incarceration and recidivism is limited and insufficient for developing federal sentencing policy. There are a limited number of studies on the subject and they present mixed results." (footnotes omitted)).

DEFENDANT'S SENTENCING MEMORANDUM
*WILSON*, CR 19–00529 SI